14650

STRICKLAND v. ANDERSON

(196 S. E., 184)

December, 1937.

*Mr. James C. Hooks,* for appellant,

*Messrs. G. Lloyd Ford* and *A. F. Woods,* for respondent,

March 29, 1938.

The opinion of the Court was delivered by Mr. Justice Fishburne.

This is an action for the alleged breach of a contract of marriage, and comes to this Court upon appeal from an order of the lower Court, of date December 7, 1937, overruling a demurrer to the complaint.

Giving to the complaint a broad and liberal construction, it substantially alleges: That some time after February 10, 1931, while the respondent was in the employ of the appel-

lant, he professed great love for her, and proposed and agreed· upon marriage with her; that the appellant was a married man, who was living separate and apart from his wife, and that the respondent, at all of the times mentioned in the complaint, had full and complete knowledge of appellant's existing marriage; that relying upon his professions of love and upon his promise to secure an early divorce from .his wife, and relying further upon his oft-reiterated statements that she would soon be his lawful wife and possess a financial interest in his vast property, including cash and bonds, she on many occasions lived with him in hotels and in apartment houses, where he held her out to the public as his lawful wife; that the appellant has fraudulently and deceitfuly breached and broken his agreement to marry the plaintiff, in that although he secured a divorce from his wife, he has married another.

The appellant assigned two grounds of demurrer: (1) That the complaint does not state facts sufficient to consti-·tute a cause of action against the defendant as appears up-on the face thereof, because the alleged marriage contract with the defendant, who had a living wife, was absolutely void in its inception, and was ineffectual to give rise to an action, because such promise of marriage is opposed to morality and public policy; and (2) because the plaintiff·has improperly united in one complaint two causes of action; one based upon an alleged marriage agreement, and the other based upon an alleged false and malicious arrest, which are separate, independent, and distinct alleged primary wrongs and causes, and therefore cannot be joined.

The Circuit Judge overruled the demurrer *in toto,* and his action in so doing is assigned as error.

We will first consider and pass upon the first ground of demurrer; that the alleged marriage agreement is void, because against public policy.

It requires no citation of authority to sustain the proposi-·tion that the mutual promise of marriage, made while the

defendant had a living wife, was void and opposed to morality and a sound public policy. But in view of the fact that the question seems to be one of first impression in this State, it will not be amiss to make a brief reference to certain well-recognized principles.

The weight of authority, if not the unanimous holding of the Courts, is summed up and reflected in the following quotation from 8 American Jurisprudence, § 4, Breach of Promise:

"Any promise of marriage made by or to a person who, to the knowledge of the parties, has a husband or wife living, is absolutely void in its inception and is ineffectual to give rise to an action, although such a promise is not to be performed until after the death of the promisor's or promisee's husband or wife. Likewise, such a promise is void when made by a married person in expectation of a divorce by force of a pending suit. Such contracts are opposed to morality and public policy. They are in themselves a violation of marital duty, and the persons who make them are morally unfaithful to the marriage tie. A renewal, by the defendant of the promise, after the dissolution of the marriage relation existing while the promise was made, will sustain an action for its breach.

"According to the view of a number of courts a man, even though married and consequently incapacitated to execute a contract or promise of marriage to another, may not escape the liability for damages occasioned by his promise to marry an unmarried woman, if the latter enters into the contract with him in ignorance of the fact that he has a wife living, unless she has knowledge of such facts as would lead an ordinarily prudent person to believe him to be married; as where the plaintiff in an action for a breach of contract of marriage knew that the defendant was cohabiting with another woman under such circumstances as to constitute a valid common-law marriage. * * * "

Also, see 4 R. C. L., 145, 146, and 9 C. J., 324 *et seq.*

The institution of marriage is so directly concerned with the public welfare that the State is said to be a third party thereto. The contract, alleged in the complaint and made under the circumstances stated, is illegal and immoral, and cannot be recognized by the Courts of this State. The matter is thus well put in *Noice v. Brown*, 38 N. J. L., 228, 20 Am. Rep., 388, affirmed on opinion of the Court below in 39 N. J. L., 133, 23 Am. Rep., 213: "It is wholly fallacious to suppose that a contract is not illegitimate if the act agreed to be done would not be illegal at the time of its contemplated performance. Such is not the law. A contract is totally void, if, when it is made, it is opposed to morality or public policy. The institution of marriage is the first act of civilization, and the protection of the married state against all molestation or disturbance is a part of the policy of every people possessed of morals and laws. * * * Nor, in a legal point of view, does it at all strengthen the argument to suggest that the defendant, at the time of making this promise, was living separated from his wife, and was looking forward to a divorce. While the marriage exists the duties inherent in such marriage likewise exist, and they cannot be thrown off at the will of either party. By voluntarily withdrawing from the society of his wife a man cannot free himself from his matrimonial obligations. Nor can he do so in the hope of a divorce. If a husband can bind himself to a future marriage conditioned on the getting of a divorce, so he can incur a similar obligation to be put in effect on the dissolution of his marriage by the death of his wife. Such contracts are highly impolitic and highly scandalous, and are, therefore, illegal."

But the respondent contends that the complaint, liberally construed, may fairly be said to allege not only an agreement for marriage prior to the securing of the divorce, but also a renewal of the promise on the part of the appellant after the divorce was obtained by him. If we stretch the allegations of the complaint to the uttermost, and accord to them every relevant inference reasonably de-

ducible therefrom under a liberal construction, the conclusion is inescapable that they allege no renewal of the promise by the appellant after the date when the divorce was secured by him from his wife.

We are in accord with the proposition that a renewal by the defendant of the promise, after the dissolution of the marriage relation, will sustain an action for its breach. This statement of the law appears to be generally recognized, as will be seen by reference to the cases cited in the notes under the sections already referred to in 8 Am. Jur. and 9 C. J., but the allegations of the complaint are not sufficient to make it applicable.

In considering the second assignment of error, with reference to the alleged improper union of two causes of action, we should state that the complaint, after stating the cause of action based upon an alleged breach of the marriage agreement, contains the following allegations, in Paragraph 8: "That recently, in order to further humiliate, injure and further damage this plaintiff, at a time when plaintiff endeavored to peaceably discuss with him her said injuries, the defendant herein willfully, wantonly and unlawfully ordered the arrest of this plaintiff, caused her to be placed in the hands of an officer and carried to the police station with intent to willfully and maliciously humiliate, mortify and distress this plaintiff."

If by the inclusion of this paragraph in the complaint it was intended to set up a cause of action for false and malicious arrest, we would unhesitatingly say that there was an improper union of two unrelated causes of action. This intention, however, is disclaimed by counsel for the respondent, who assert that the allegations of Paragraph 8 were inserted solely for the purpose of bringing the whole situation, with all circumstances of aggravation, before the Court for the purpose of enhancing the damage, which they argue is entirely permissible, particularly in a case where punitive damages are sought.

It is suggested in respondent's brief that the case of *Coggins v. Cannon,* 112 S. C., 225, 99 S. E., 823, 824 (a suit based upon the alleged breach of a marriage contract), supports this view by way of analogy. In this case it was held:

"The second exception complains that evidence of seduction of the plaintiff by defendant, in the absence of allegations in the complaint that the act was done by virtue of the promise to marry, is incompetent and should (not) have been received. This exception is overruled.  \*  \*  \*.

"The fact that plaintiff was seduced under promise of marriage was clearly admissible in evidence as an aggravation of damages for the jury to consider in arriving at their verdict."

We do not think that the holding in the *Coggins case* is in point. Unquestionably, in an action for a breach of promise, evidence of the plaintiff's seduction is admissible on the question of aggravation of damages. Such evidence would be entirely pertinent, but we are unable to see the relevancy in such a case, of allegations or proof tending to establish false and malicious arrest. The two things have no appropriate connection or relation.

There is much merit in the suggestion of the respondent, that the proper procedure which should have been adopted by the appellant with reference to the second assignment of error would have been a motion that the complaint be made more definite and certain, or a motion to strike.

The following quotation from *Marion v. City Council of Charleston,* 68 S. C., 257, 47 S. E., 140, appears to be in point:

"The question presented by the exceptions in this case is whether a complaint is subject to a demurrer on the ground it appears upon the face of the complaint that several causes of action have been improperly united, when the allegations are set forth, in form, as a single cause of action.

"This question is conclusively settled by the case of *Cartin v. R. R.,* 43 S. C., 221, 20 S. E., 979, 49 Am. St. Rep, 829, in which the court uses this language: 'If two causes

of action were set forth in the complaint, without being separately stated, the defendant, it is true, had the right to make a motion that the complaint be made more definite and certain, or, if allegations were made which were unnecessary to sustain the cause of action stated in the complaint, to make a motion to strike out such allegations as irrelevant and as surplusage. Pom. R. & R. R. §§ 447, 451. If the defendant waived said objections by failing to make such motions, then the plaintiff had the right to the relief to which all the allegations showed he was entitled'."

However, as we are going to give the respondent the privilege of amending her complaint, we deem it best in the interest of saving time, expense, and effort, to say, as we have already said, that the allegations contained in Paragraph 8 are irrelevant and surplusage, and have no proper place in the complaint.

The judgment below is reversed and the case remanded, with leave to the respondent to amend her complaint, as she may be advised; and to serve the same upon the defendant's attorney within twenty days after the remittitur is sent down; and that the defendant have twenty days after such service within which to plead to the same.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.